[Cite as *Wiggins v. Moose Lodge #11*, 2016-Ohio-954.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Richard Wiggins, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-896 |
| v. | : | (C.P.C. No. 14CV-9692) |
| Moose Lodge #11, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 10, 2016

**On brief:** Hillard M. Abroms, for appellant. **Argued:** Hillard M. Abroms

**On brief:** Freund, Freeze & Arnold, and Carl A. Anthony, for appellee. **Argued:** Carl A. Anthony

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, Richard Wiggins ("Wiggins"), appeals from the decision of the Franklin County Court of Common Pleas granting defendant-appellee's, Moose Lodge #11 ("the Lodge"), motion for summary judgment. For the following reasons, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On September 19, 2014, Wiggins refiled this action in the Franklin County Court of Common Pleas alleging that shortly after midnight on January 22, 2011, due to the negligence of the Lodge, an unnatural accumulation of snow and ice formed in the Lodge's parking lot, causing him to fall and sustain injuries.

{¶ 3} On January 20, 2011, 5.7 inches of snow fell in the Columbus area. Between the snowfall and before Wiggins' fall, the temperature did not rise above freezing. The high temperature on January 21, 2011, was 20 degrees.

{¶ 4} On June 17, 2013, during the pendency of the initial action, Wiggins' deposition was taken and is part of the record. Wiggins testified that he arrived at the Lodge around 9 p.m. on January 21, 2011. It was not snowing when he arrived. Wiggins parked in the parking lot and vehicular traffic had created ruts and packed down the snow. Wiggins testified that the lot had not been plowed. Wiggins went to the Lodge that night to see and take pictures of a musical band. In addition to taking pictures of the band that evening, Wiggins socialized and drank about five cans of Bud Light.

{¶ 5} When he left at 12:30 a.m. on January 22, 2011, Wiggins was carrying a camera case containing his camera and lenses, and a case with a small laptop in it. Wiggins walked down the ramp leading from the front door to the parking lot. The lot was virtually empty, so he went diagonally across the lot toward his Jeep. When he was about 10 to 12 feet into the lot, his feet went forward out from underneath him, and he fell backward. Wiggins testified as follows:

> Q. And your feet slipped out from underneath you on snow
> and ice?
>
> A. Yes.
>
> Q. Was there any other reason that you fell other than the
> snow and ice?
>
> A. No.
>
> Q. And did the snow and ice appear to just be typical snow
> and ice, snow that falls and turns into ice from being
> compacted?
>
> A. As far as having been plowed?
> Q. I guess what I'm saying is other than just typical snowfall
> that eventually gets compacted by traffic driving on it and
> freezing, was there anything other than that going on in the
> area where you fell that caused you to slip?
>
> A. Refreezing.
>
> Q. Okay. And refreezing?
>
> A. Yes.
>
> Q. So we have the original snowfall which causes the snow

to be there, whatever traffic driving over it that --

A. Packs it.

Q. -- packs it, moves it around, maybe melts it a little bit and eventually refreezes, and that's what you slipped and fell on?

A. Yes.

Q. When you walked in, that same condition was there, correct?

A. Yes.

Q. The same snow and ice was there?

A. Yeah, it didn't snow 3 inches while I was there.

Q. Do you know if it did snow at all while you were there?

A. No, I can't answer that.

Q. You don't know?

A. I don't know.

(Deposition of Richard Wiggins, 60-61.)

{¶ 6} Wiggins contends that the accumulation of snow and ice in the parking lot was an unnatural accumulation. In support of his claim, Wiggins identified Gerald Mazzoni as an expert witness. Mazzoni's discovery deposition was taken on June 2, 2015, and is part of the record.

{¶ 7} Mazzoni testified that he is a self-employed general contractor. Mazzoni has no engineering or architectural training, and has no formal training in drainage systems. Mazzoni stated that he has "plenty" of on the job training in general drainage issues.

{¶ 8} Mazzoni admitted that prior to his deposition, he conducted no experiments or testing and had little background of that information upon which to base his opinion.[1] He did not speak to Wiggins or review his deposition, or look at photographs or videos of

---

[1] According to an affidavit of Mazzoni filed on August 6, 2015, he returned to the site on July 3, 2015, and measured the slope. On August 6, 2015, he again returned to the site and observed standing water. However, nowhere in the affidavit are any of his opinions, or lack thereof, changed or supplemented.

the area. The only information Mazzoni had about the facts of this case came from discussions with Wiggins' lawyer, which involved a general overview of the accident, and a visit to the property that lasted 15 to 20 minutes several weeks prior to his deposition. (Deposition of Gerald Mazzoni, 12-13, 25-26.)  During that visit, Mazzoni walked around and visually observed the property.  At that time, there was no active drainage going on. He admitted he did not know what the weather was like in the two weeks prior to the fall.

{¶ 9}    Mazzoni testified that the parking lot in question was poorly designed and did not allow for proper drainage. He opined that under certain conditions, the poor drainage system might cause unnatural accumulations of snow and ice. He stated water or moisture could migrate from the upper parts of the slope of the property, and then pool in the parking lot. (Deposition of Gerald Mazzoni, 31-38.)

{¶ 10} Mazzoni admitted he could not say where the snow and ice upon which Wiggins fall came from.  In fact, when asked specifically, Mazzoni gave several different answers.  When asked how the ice and snow that Wiggins fell on got there,  he  first  stated "I assume that there was a snow or an ice storm that evening," but he admitted he really did not know.  (Deposition of Gerald Mazzoni, 28.)  He later stated that "Mr. Hillard told me that there was an ice storm and he slipped and fell on ice, so I can only assume there was ice on the ground." (Deposition of Gerald Mazzoni, 31.) ("Mr. Hillard" is plaintiff's lawyer, Hillard Abroms.)  Later still, Mazzoni testified:

> Q. And I'm going to go back to the snow and ice in the parking lot, and I'm going to ask you where that snow and ice buildup came from.
>
> A. I mean, that's an open-ended question, I guess.  I mean, where it came from?
>
> Q. Yes.
>
> A. I wasn't there.
>
> Q. Okay.  So you don't know?
>
> A. I do not know.

(Deposition of Gerald Mazzoni, 44.)  Additionally, Mazzoni testified:

Q. Are you saying that the ice and/or snow on which Mr. Wiggins slipped and fell was caused by a runoff of moisture from the grass or sidewalk area?

A. Well, you asked me earlier if I knew where the ice came from.

Q. I did.

A. And my opinion and answer was that ice isn't falling from the sky, so it's not going to sit right where it fell. So my opinion is that any snow or rainwater as it's moving towards the drain, where it fell is not going to be where it is. So where he fell, it would have to move from -- towards the building down towards the drain.

Q. Okay. I understand that. So are you saying that it is your opinion that the ice on which Mr. Wiggins slipped and fell was caused by a flow of water from up on the property?

A. I wasn't there, so I'm just offering my opinion in general as far as the drainage and the water flow in this particular property.

Q. Okay.

A. So as far as Mr. Wiggins and how he fell and that, I can't answer because I wasn't there.

(Deposition of Gerald Mazzoni, 50-51.) Mazzoni admitted he did not know if, in the days leading up to Wiggins' fall, it was warm enough for moisture to migrate to the parking lot. Mazzoni testified he had no opinion, because he did not know, whether the snow and ice upon which Wiggins fell was a natural or unnatural accumulation of snow and ice.

{¶ 11} On June 25, 2015, the Lodge moved for summary judgment on the grounds that there is no evidence that it was negligent in this matter, and that it did not owe Wiggins a duty to protect him because the snow and ice on the ground was a natural accumulation.

{¶ 12} The court reviewed the evidence and stated "the Court must come to the conclusion that the snow and ice upon which Plaintiff fell was a natural accumulation of snow and ice." (Decision and Entry, 4.) The court found that "Plaintiff's testimony, when looked at as a whole, provides the Court with no evidence to show that the snow and ice

upon which Plaintiff fell was anything other than natural." (Decision and Entry, 4.) In addition, "Mazzoni's testimony does not show that the accumulation of snow and ice on the night of Plaintiff's fall was unnatural." (Decision and Entry, 5.) As such, the trial court held that:

> When all is said and done, the Court must find that there is no evidence in this matter to show that the snow and ice upon which Plaintiff fell was anything other than a natural accumulation of snow and ice. Therefore, Defendant's motion must be granted.

(Decision and Entry, 6.)

## II. ASSIGNMENT OF ERROR

{¶ 13} Wiggins appeals, assigning a single error as follows:

> The trial court erred when it granted summary judgment in Defendant's favor.
>
> A. The trial court erred when it disregarded testimony of the Plaintiff that he fell on an unnatural accumulation of snow and ice, failed to make inferences favorable to Plaintiff, and instead made inferences in favor of the Defendant.

## III. STANDARD OF REVIEW

{¶ 14} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995). However, the party against whom the motion for summary judgment is made is entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 15} A "party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the

absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). In accordance with Civ.R. 56(E), when a properly supported motion for summary judgment is made, the nonmoving party may not rest upon the mere allegations or denials contained in the pleadings but must come forward with specific facts demonstrating a genuine issue of fact for trial. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against him.

## IV. MOTION FOR SUMMARY JUDGMENT PROPERLY GRANTED

{¶ 16} The Lodge argues that there is no evidence that it was negligent in this matter. "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). The Lodge argues that the snow and ice on the ground was a natural accumulation, and therefore, it owed no duty to Wiggins to protect him.

{¶ 17} In *Kaeppner v. Leading Mgmt., Inc.,* 10th Dist. No. 05AP-1324, 2006-Ohio-3588, we stated the law in this area, as relevant to the present case, as follows:

> An owner or occupier of premises owes business invitees * * * a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 Ohio B. 267, 480 N.E.2d 474. However, the Supreme Court of Ohio has consistently held that an owner or occupier's duty of ordinary care does not extend to natural accumulations of ice and snow. *Debie v. Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St.2d 38, 227 N.E.2d 603; *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 233 N.E.2d 589; *Brinkman v. Ross* (1993), 68 Ohio St.3d 82, 1993 Ohio 72, 623 N.E.2d 1175. Thus, a landowner has no duty to remove natural accumulations of ice and snow, even if such conditions exist for an unreasonable amount of time. *Debie* at 41.
>
> Ohio courts have recognized exceptions to the general rule that an owner or occupier of property owes no duty to invitees regarding natural accumulations of ice and snow. For example, * * * where an owner or occupier is actively negligent in permitting or creating an unnatural accumulation of ice and snow, the no-duty rule is inapplicable. See *Lopatkovich v. Tiffin* (1986), 28 Ohio St.3d 204, 207, 28 Ohio B. 290, 503

N.E.2d 154. To survive a properly supported motion for summary judgment in this type of case, the plaintiff must produce evidence to establish * * * that the land owner was actively negligent in permitting an unnatural accumulation of ice and snow to exist. *Sasse v. Mahie* (Nov. 19, 1999), Lake App. No. 98-L-157, 1999 Ohio App. LEXIS 5508; see *Martin v. Hook SuperX, Inc.* (Mar. 18, 1993), Franklin App. No. 92AP-1649, 1993 Ohio App. LEXIS 1569.

*Id.* at ¶ 10-11.

{¶ 18} This court has explained in *Thatcher v. Lauffer Ravines*, 1oth Dist. No. 11AP-851, 2012-Ohio-6193, ¶ 17, that:

An "unnatural" accumulation is one created by causes and factors other than natural meteorological forces. Natural meteorological forces include inclement weather conditions, low temperatures, drifting snow, strong winds, and freeze cycles. Unnatural accumulations therefore are caused by the intervention of human action doing something that would cause ice and snow to accumulate in unexpected places and ways. *Porter v. Miller*, 13 Ohio App.3d 93, 13 Ohio B. 110, 468 N.E.2d 134 (6th Dist.1983).

{¶ 19} Simply stated, property owners and occupiers owe no duty to protect patrons from naturally occurring snow and ice. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993). *See also Luff v. Ravemore, Inc.*, 10th Dist. No. 11AP-16, 2011-Ohio-6765, at ¶ 13. "This is known as the 'winter no-duty rule.' " *Id.* at ¶ 13. "The rationale is that individuals are assumed to appreciate and protect themselves against the inherent dangers associated with ice and snow during Ohio winters." *Brinkman* at 84, citing *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38 (1967), and *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968).

{¶ 20} Wiggins argues in his assignment of error that the court "disregarded testimony of the Plaintiff that he fell on an unnatural accumulation of snow and ice, failed to make inferences favorable to Plaintiff, and instead made inferences in favor of the Defendant."

{¶ 21} Here, Wiggins testified that he fell on "refreezing" ice and snow. However, appellant admits that "Plaintiff was unable to account for the cause of this refreezing, and was only able to speculate." (Appellant's Brief, 6.)  The ice and snow may have been compacted, moved by tire and foot traffic, and melted and refroze, but none of those

factors converted the snow into something unnatural so as to qualify as an exception to the "winter no-duty rule". We have held that "[s]now that melts and later refreezes is a natural accumulation." *Kaeppner* at ¶ 17. In addition, we have held that "melted run-off from snow piled onto a sloped area which runs down and re-freezes * * * must be anticipated by all who live in a snow belt area" and does not constitute an unnatural accumulation. *Moore v. Kroger*, 10th Dist. No. 10AP-431, 2010-Ohio-5721, ¶ 10. As such, Wiggins' testimony provides no evidence that the snow and ice upon which he fell was anything other than natural.

{¶ 22} Wiggins' expert, Mazzoni, testified that the parking lot in question was poorly designed and that, under certain conditions, the poor drainage system might cause unnatural accumulations of snow and ice. Mazzoni admitted he does not know if the snow and ice upon which Wiggins fell was caused by the lack of drainage and resulting runoff, or simply by falling snow.

{¶ 23} On numerous occasions during his deposition, Mazzoni was asked if he could render an opinion as to whether the snow and ice upon which Wiggins fell was an unnatural accumulation. On each occasion, Mazzoni could not state an opinion. In some cases he simply stated that he did not know. In sum, Mazzoni suggests conditions were such that water could run down, due to a slope, pool, and form ice in the parking lot, but he has no knowledge and offers no opinion that this actually occurred in this case. As such, Mazzoni's testimony does not provide any evidence that the accumulation of snow and ice on the night of Wiggins' fall was unnatural.

{¶ 24} Appellant suggests the combination of Wiggins' and Mazzoni's testimony is sufficient to get the case to the jury. However, Wiggins submitted no evidence that would allow a jury to do anything but speculate about how the ice in the parking lot at the time of Wiggins' fall was formed, i.e., there is no evidence to show there actually was a runoff of water which pooled in the parking lot on January 21, 2011. Wiggins also argues that "[a] jury, with common knowledge, was denied the opportunity to decide if they agreed or disagreed with Plaintiff's expert and whether ordinary, reasonable minds could determine if the ice accumulation was natural or unnatural." (Appellant's Brief, 2-3.) This court's opinion in *Thatcher* is instructive. In *Thatcher*, we stated:

> The trial court granted summary judgment in part because it
> noted that Riley's testimony was "too speculative" (Sept. 6,

2011 Decision at 12). The court relied upon *Holbrook v. Kingsgate Condo Assn.*, 12th Dist. No. CA2009-07-193, 2010 Ohio 850, for the proposition that an expert must opine that there is a greater than 50 percent likelihood that the condition observed caused the unnatural accumulation leading to injury. As such, the court found that the expert's opinion demonstrated too great a level of uncertainty and could not create a genuine issue of material fact on the question of unnatural accumulation of ice and snow.

*Id.* at ¶ 36. Here, Mazzoni does not even render the final opinion that the actual ice upon which Wiggins fell was "probably" formed by runoff and freezing. Even if the jury "agreed" with Mazzoni, i.e., that they do not have an opinion as to whether the ice was natural or unnatural, it would not give the jury a basis for finding that the accumulation was unnatural.

{¶ 25} To create a genuine issue of material fact on this question, appellant would have had to provide actual evidence to at least allow the jury to form a reasonable inference that the ice was unnaturally formed. Appellant failed to provide that evidence here. Wiggins' testimony indicates that the ice was a natural accumulation. He stated the ice melted and refroze, but he offered no evidence that the ice was formed by runoff. Mazzoni's testimony establishes only that snow and ice could melt and could then run down into the parking lot and refreeze. Based solely on that possibility, and without evidence that this in fact happened, Wiggins speculates in his argument that the ice on which he slipped was an unnatural accumulation of snow and ice. No evidence actually establishes that the scenario posited by Mazzoni occurred.

{¶ 26} This court has noted that "[s]peculation and conjecture are not sufficient to overcome [a party's] burden of offering specific facts showing that there is a genuine issue for trial." *Carroll v. Alliant Techsystems, Inc.*, 10th Dist. No. 06AP-519, 2006-Ohio-5521, ¶ 17. The mere possibility that water could have melted and run into the parking lot and refroze, and that Wiggins slipped and fell on such ice, rather than the 5.7 inches of snow that fell the day before the accident, is insufficient.

{¶ 27} Based on our review of the facts and the relevant law, we agree with the trial court. Neither Wiggins, nor his expert, has presented evidence that there was an unnatural accumulation of snow and ice at the time of the incident. Appellant did not meet his burden to come forward with specific facts demonstrating that there is a genuine

issue of material fact as to whether he fell upon an unnatural accumulation of snow and ice. Therefore, there is no genuine issue of material fact for trial. For the foregoing reasons, Wiggins' assignment of error is overruled.

## V. DISPOSITION

{¶ 28} Having overruled Wiggins' assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J. and TYACK, J., concur.

————————————————