[Cite as *Colville v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-7954.]

| | |
|---|---|
| KEVIN WAYNE COLVILLE | Case No. 2015-00711 |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Pickaway Correctional Institution (PCI). Plaintiff testified that around noon on February 27, 2015, after returning to the D1 housing unit from the chow hall, he slipped and fell on a stairway causing injuries. Plaintiff stated that at that time he was assigned to the D1 housing unit, which is the lower level of the D dormitory. Plaintiff added that he had been assigned to the housing unit for approximately one month prior to this incident. Plaintiff explained that D1 is lower than the ground level and that as a result, in order to enter or exit D1, all 250 inmates are required to either ascend or descend the 10-12 steps of this particular stairway. Plaintiff further added that there is no structural overhang for weather protection above the entrance to D1 and no handrail for use on the stairway.

{¶3} Plaintiff testified that there is a drain at the bottom of the stairway on the landing. According to plaintiff, water collects at the bottom of the stairway on the landing due to a slow drain; however, plaintiff acknowledged that prior to February 27, 2015, he never wrote an informal complaint resolution regarding the drainage issue. Plaintiff asserted that the drain has always caused problems and that people constantly

complain about the drain.  Plaintiff added that in the six months preceding the fall while he was at PCI, he never noticed anyone perform maintenance work on the drain.

{¶4} Plaintiff testified that it snowed a couple days before he fell.  Plaintiff explained that it subsequently warmed up but that on February 27, 2015, the water froze due to the cool and clear weather.  Plaintiff added that an inmate maintenance crew usually would clear the stairway of snow, and salt any existing ice, but no one salted the stairway the day that he fell.  Plaintiff testified that on February 27, 2015, the stairway had an accumulation of snow and ice.  Plaintiff described the stairway as slick and described the landing as a sheet of ice.  Plaintiff acknowledged that the snowy and icy condition of the stairway was unchanged between the time he proceeded to the chow hall and when he returned.

{¶5} Plaintiff testified that as he returned from the chow hall to D1, he along with a group of several other inmates, began to descend the stairway.  According to plaintiff, as he was descending the stairway a corrections officer called out causing him to turn in the direction of the corrections officer.  Plaintiff testified that as he continued down the stairway while looking in the direction of the corrections officer, he slipped and fell to the bottom of the stairway where he slipped a second time on the landing. Plaintiff stated that he attempted to brace himself with his right arm but that he heard a "rip" in his arm.

{¶6} Plaintiff reported that after he fell he went to his bed but felt something was wrong with his arm.  Plaintiff removed his coat and discovered that his bicep had moved to his shoulder.  Plaintiff was escorted to the infirmary where he remained for more than five hours until he was subsequently transported to an outside hospital where he underwent surgery to repair his torn bicep.

{¶7} Larry Parker, a maintenance superintendent at PCI, testified that he has been employed by the Ohio Department of Rehabilitation and Correction (DRC) for 26 years.  Prior to working at PCI, Parker worked as the maintenance superintendent at the Dayton Correctional Institution and as a stationary engineer and maintenance repair

worker at the Ross Correctional Institution.  Parker testified that his duties as a maintenance superintendent include overseeing all maintenance projects, work orders, and overall maintenance of the institution.  Parker began working at PCI in January 2015.

{¶8} Parker testified that in February 2015, PCI employed five or six maintenance repair workers.  Parker explained that the maintenance repair workers are assigned to specific buildings and also receive assignments as needed.  Parker asserted that the maintenance repair workers continuously inspect the buildings to which they are assigned as they perform their daily tasks.

{¶9} Parker testified that work orders are used to inform the maintenance staff regarding necessary maintenance and that any staff member may submit a maintenance request either in writing in the form of a work order or through a telephone call to the maintenance department.  Parker explained that a work order is a form that a staff member completes to report a maintenance issue.  The form is then sent to the maintenance department and assigned to a maintenance worker to perform the work. Parker asserted that the corrections officers are very active about reporting issues that need to be fixed.

{¶10} Parker testified that all maintenance requests are logged in a database. Parker reported that there were no maintenance requests for a drainage issue at the entryway of D1 during January and February 2015.  Parker authenticated a copy of all such requests for the months of January and February 2015 (Defendant's Exhibit A). Parker acknowledged that he did not search the database for maintenance requests prior to January 2015 and that he has no knowledge of whether any maintenance repairs occurred on the drain prior to January 2015.  Finally, Parker acknowledged that D1 was built sometime in the early 1900s.

{¶11} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's

acts or omissions resulted in a breach of that duty, and that the breach proximately caused him injury. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶12} In general, a possessor of land has no duty to protect an invitee from natural accumulations of ice and snow on his property. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993). Implicit in this rule is the rationale that such accumulations are so open and obvious that invitees can be expected to protect themselves from the danger they present. *Dean v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 97API12-1614, 1998 Ohio App. LEXIS 4451 (Sept. 24, 1998). Essentially, "an invitee who chooses to traverse a natural accumulation of ice or snow is generally presumed to have assumed the risk of his or her action to the degree that no duty exists on the premises owner." *Id*. However, inmates incarcerated in a state penal institution are not afforded the status of a traditional "invitee" and are not always free, as an invitee would be, to refrain from traversing the accumulation of ice and snow and so they cannot be said to assume the risk of doing so. *Id*; *see also May v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 00AP-1327, 2001 Ohio App. LEXIS 2859 (recognizing that an inmate who slipped and fell on a natural accumulation of ice or snow had no opportunity to refrain from using the assigned path); *Fields v. Ohio Dept. of Rehab. & Corr*, Ct. of Cl. No. 2010-12281 (June 7, 2012). Rather, in the context of the custodial relationship between the state and its inmates, the state has a duty to exercise reasonable care to prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know. *Moore v. Ohio Dept. of Rehab. & Corr.*, 89 Ohio App.3d 107, 112 (10th Dist.1993); *Cordell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 08AP-749, 2009-Ohio-1555; *McCoy v. Engle*, 42 Ohio App.3d 204, 207-208 (10th Dist.1987); *Dean, supra*.

{¶13} With regard to notice, "[n]otice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information

obtained." *Jenkins v. Ohio Dept. of Rehab & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 12; *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14. "To support an inference of constructive notice, a plaintiff may submit evidence that the condition existed for such a length of time that the owner or its agent's failure to warn against it or remove it resulted from their failure to exercise ordinary care." *Jenkins* at ¶ 12.

{¶14} Upon review of the evidence, the magistrate finds that on February 27, 2015, while descending a stairway to enter the D1 dormitory building at PCI, plaintiff slipped on an accumulation of ice and snow, fell to the landing, and slipped a second time as a result of ice that had formed on the landing. Plaintiff sustained injuries as a result of the fall. Neither the ice on the stairway nor the landing had been salted on February 27, 2015.

{¶15} The magistrate further finds that plaintiff failed to prove that defendant had actual or constructive notice that the stairway posed an unreasonable risk of harm to plaintiff due to ice and snow on the stairway. Plaintiff did not offer evidence that defendant was aware of the ice and snow on the stairway. Indeed, plaintiff did not inform anyone that ice had formed on the stairway or landing on February 27, 2015, even though plaintiff was aware that the stairway was slick and had previously used the stairway to exit D1 on his way to chow earlier that morning. Furthermore, it was established that it snowed several days prior to February 27, 2015, followed by a pattern of warm weather causing the snow to melt. The water then froze on the stairway and landing of the entryway into D1. Accordingly, the ice and snow

accumulation on the stairway and landing did not exist for such a length of time to support a finding that defendant had constructive notice of the condition of the stairway.

{¶16} The magistrate also finds that plaintiff failed to prove that defendant had actual or constructive notice of a poorly functioning drain such that ice continually accumulated at the landing. Plaintiff did not present evidence that defendant had actual knowledge that the drain did not function properly. Indeed, plaintiff failed to testify to any instance where defendant was made aware that the drain functioned improperly such that water accumulated on the landing. While plaintiff testified that everyone was generally aware of the poorly functioning drain and that everyone complained about the drain, plaintiff acknowledged on cross-examination that he had only resided in D1 for approximately one month preceding the fall. Plaintiff's vague testimony regarding a general knowledge of a poorly functioning drain is insufficient to support a finding of actual or constructive notice. Additionally, even assuming that the drain did not function properly, plaintiff only presented evidence that the condition existed for at most one month preceding his fall—the time period in which plaintiff actually resided in D1. The magistrate finds that such evidence is not sufficient to support a finding of actual or constructive notice.

{¶17} Plaintiff does not argue or allege that the poor drainage system created an unnatural accumulation of ice and snow. Nevertheless, the magistrate finds that plaintiff failed to present credible evidence that defendant was actively negligent in permitting or creating an unnatural accumulation of ice and snow. *Wiggins v. Moose Lodge #11*, 10th Dist. Franklin No. 15AP-896, 2016-Ohio-954.

{¶18} Finally, the magistrate finds that the proximate cause of plaintiff's fall on the stairway on February 27, 2015, was his own failure to take reasonable care for his own safety. *Forester v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-366, 2011-Ohio-6296, ¶ 8 (an inmate is required to use reasonable care to ensure his or her own safety). Indeed, plaintiff acknowledged that he was aware of the condition of the

stairway; however, plaintiff diverted his attention away from the stairway and in the direction of a corrections officer while he continued to descend the stairway. Furthermore, plaintiff did not demonstrate that the hazard entirely precluded his route of travel. Additionally, plaintiff traversed the stairway multiple times every day and ascended the stairway shortly before he fell. Accordingly, plaintiff knew of the open and obvious hazard yet failed to take reasonable care for his own safety. *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-541, 2010-Ohio-2774, ¶ 29 (an inmate's inability to select his route of travel does not mean the hazard was not an open and obvious condition); *see also Cordell* at ¶ 9. Moreover, plaintiff failed to establish that attendant circumstances served as an exception to the open and obvious doctrine. A corrections officer calling out is not "so abnormal that it unreasonably increased the normal risk of a harmful result." *Mayle* at ¶ 20, quoting *Cummin v. Image Mart, Inc.*, 10th Dist. Franklin No. 03AP-1284, 2004-Ohio-2840, ¶ 10. Accordingly, the magistrate finds that plaintiff's failure to use reasonable care to ensure his own safety proximately caused his fall.

{¶19} Based on the foregoing, the magistrate finds that plaintiff failed to prove his claims by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding                              of                              fact                              or*

*conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Timothy M. Miller
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed October 20, 2016**
**Sent to S.C. Reporter 11/30/16**