[Cite as *Kraft v. OMCO Building, L.L.C.*, 2019-Ohio-621.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Warren R. Kraft, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-743 |
| v. | : | (C.P.C. No. 16CV-11005) |
| OMCO Building, LLC., et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on February 21, 2019

**On brief:** *Warren R. Kraft,* pro se. **Argued:** *Warren R. Kraft.*

**On brief:** *McDonald Hopkins LLC, Richard W. Cline,* and *Joseph M. Muska* for defendant-appellee OMCO Building, LLC. **Argued:** *Joseph M. Muska.*

**On brief:** *McNeal Schick Archibald & Biro Co., LPA, Brian T. Winchester,* and *Jesse M. Schmidt* for defendant-appellee Davis Wince, Ltd., f/k/a Robert S. Davis, Ltd. **Argued:** *Brian T. Winchester.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} This is a slip-and-fall negligence action in which the trial court granted summary judgment in favor of defendants-appellees OMCO Building LLC ("OMCO") and Davis Wince Ltd., f/k/a Robert S. Davis, Ltd. ("Davis"). Plaintiff-appellant, Warren R. Kraft, appeals from these judgments of the Franklin County Court of Common Pleas that became final and appealable on September 19, 2017.[1] For the reasons that follow, we affirm

_____

[1] This Court journalized Kraft's voluntary dismissals with respect to defendant-appellee, Hanlin-Rainaldi Construction Corp., on January 30, 2o18, and to defendant-appellee, Celeste Townhomes, LLC, on February 27, 2018. Consequently, this appeal continues only as to OMCO and Davis.

the judgments of the trial court.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   On the morning of November 22, 2014, Kraft was walking across the cement driveway of a building located at 1200 Oakland Avenue, Columbus, Ohio.  Kraft alleges the driveway "was covered with ice frozen from the rain runoff on the driveways [sic] steep grade and slope during the night before."  (Nov. 18, 2016 Compl. at ¶ 17.)  Kraft slipped and fell, striking his head on the driveway.

{¶ 3}   On November 18, 2016, Kraft commenced the underlying action, alleging that he had slipped and fallen on an unnatural and improper accumulation of ice on an improperly designed driveway.  He asserted negligence claims against OMCO as the owner of the premises, and against Davis, Celeste Townhomes, LLC ("Celeste"), and Hanlin-Rainaldi Construction Corp. ("Hanlin-Rainaldi") as entities involved in the design, construction, and building of the premises, including the driveway.  Kraft alleged that the defendants-appellees were negligent in the design, construction, and/or maintenance of the driveway, which allowed the unnatural accumulation of ice on the driveway and created an unreasonable risk of injury.  Kraft further alleged that the defendants-appellees breached their duty of care by failing to exercise reasonable care for his safety or by failing to warn him of the improper accumulation of ice.  Kraft claimed their negligence was a direct, proximate, and foreseeable cause of his fall and the serious and permanent injuries he sustained, including but not limited to a head injury.  Kraft sought damages for lost earnings and earning capacity, pain, suffering and emotional distress, and medical expenses.

{¶ 4}   The trial court's original case schedule established preliminary discovery deadlines.  The initial joint disclosure of all witnesses was to occur no later than April 7, 2017, and supplemental disclosure of all witness would occur no later than June 2, 2017.  Dispositive motions were due by August 25, 2017.  The discovery cut-off date was September 8, 2017.

### A.  Davis's May 18, 2017 Motion for Summary Judgment

{¶ 5}   Davis served as the architect for the building located at 1200 Oakland Avenue, Columbus, Ohio.  On May 18, 2017, Davis filed a motion for summary judgment, arguing that (1) Kraft's claims against it were barred by application of Ohio's ten-year Statute of Repose for claims against design professionals, R.C. 2305.131(A)(1); and

(2) because Kraft, who was not an architect or an engineer, had failed to produce an expert report to support his negligent design claims against Davis. Davis attached to its motion the affidavit of Matt Canterna, a partner and licensed AIA architect at Davis, who reviewed the records of Davis's involvement with the original design and construction of 1200 Oakland Avenue, part of a four-townhouse project ("the Project"). Canterna opined "that Davis, at all times relevant, met the standard of care for a licensed professional architect, for all work performed on the Project." (Canterna Aff., Ex. A at ¶ 6, attached to May 18, 2017 Davis's Mot. for Summ. Jgmt.) Canterna further averred "with certainty that Davis' work on the Project was substantially completed more than ten years prior to Warren Kraft's fall at the property on November 22, 2014." *Id.* at ¶ 9.

{¶ 6} Davis also argued that Kraft was required to present expert testimony to support his claim that Davis had negligently designed the driveway:

> "Whether an architect exercises reasonable care in the preparation of designs depends upon the standard of care which licensed architects must follow. Expert testimony is required to establish the standard of care, unless the lack of skill or care of the professional is so apparent as to be within the comprehension of a layperson and requires only common knowledge and experience to understand it." *Simon v. Drake Const. Co.*, 87 Ohio App.3d 23, 621 N.E.2d 837 (1993), quoted in *Vosgerichian v. Mancini Shah & Associates*, 1996 Ohio App. LEXIS 78, 8th District Cuyahoga Cty. Nos. 68931, 68943 at *9, followed in *Staph v. Sheldon*, 2009-Ohio-122, 8th Dist. Cuyahoga Cty. No. 91619. * * *
>
> Here, [Kraft] has failed to present the legally required opinion of a licensed architect to support his theory that Davis negligently designed the driveway at issue. This is not a case involving a defect within the comprehension of a layperson, such as a sidewalk heaved by tree roots to create a six inch high lip. Rather, this case involves the design of a driveway which has served the landowner and all of its guests to their satisfaction, for many years. [Kraft's] allegations regarding a defect in the slope or grade in the driveway, or any other aspect of the driveway design, are simply baseless without the opinion of a licensed architect, an expert qualified to hold such an opinion. [Kraft's] allegations against Davis are a thinly veiled attempt to circumvent application of Ohio law establishing that a landowner has no duty to clear a natural accumulation of ice from a driveway, and bring another defendant into this case, without the required evidentiary support. See *Brinkman v.*

> *Ross*, 68 Ohio St.3d, 82, 84, 1993 Ohio 72, 623 N.E.2d 1175. If a defect caused the accumulation, it is arguably "unnatural." Yet, without the required expert testimony, there is no evidence of a design defect or that Davis breached the required standard of care in Ohio for an architect. [Kraft's] claims against Davis thus fail as a matter of law.

(Davis's Mot. for Summ. Jgmt. at 6-7.)

{¶ 7}    Our de novo review of the record reveals that Kraft did not submit the name of an expert witness, did not file a brief in opposition to Davis's motion, and did request an extension of time within which to do so, before the trial court ruled on Davis's motion.

{¶ 8}    On June 29, 2017, the trial court issued a decision and entry granting Davis's motion for summary judgment.  The trial court subsequently granted dispositive motions filed by the other defendants-appellees, to which Kraft also failed to respond.   On September 19, 2017, the trial court issued a notice of final appealable order.

## B.  OMCO's August 8, 2017 Motion for Summary Judgment

{¶ 9}    On April 7, 2017, OMCO filed its initial disclosure of witnesses.  On May 3, 2017, the trial court issued a discovery order.  On May 8, 2017, OMCO sent Kraft its first set of requests for admissions, interrogatories, and request for production of documents. Kraft subsequently communicated with OMCO's counsel, requesting additional time to respond to OMCO's discovery requests.  On May 19, 2017, Kraft filed a motion with the trial court requesting that he be given until June 7, 2017 to respond to OMCO's discovery requests. Kraft did not respond by June 7, 2017, thus OMCO renewed its request by letter dated June 20, 2917, asking that Kraft respond to OMCO's discovery requests within seven days.

{¶ 10} On August 8, 2017, OMCO filed a motion for summary judgment, arguing that Kraft's claims against it sounded in negligence, but there was no evidence that OMCO had been negligent in this matter. OMCO stated that, because Kraft had not objected to, answered, or otherwise responded to OMCO's discovery requests, OMCO's requests were deemed admitted in accordance with Civ.R. 36(A)(1).  OMCO stated:

> Thus, [Kraft] has admitted the following with regard to his claims against OMCO: (i) that he has no evidence or facts to support any of his claims against OMCO as alleged in the Complaint; (ii) that OMCO is not liable for any of [Kraft's] alleged injuries as a result of the alleged slip and fall incident; and (iii) that [Kraft] suffered no injuries or damages as a result of the alleged slip and fall incident set forth in the Complaint.

> Notwithstanding these conclusively established facts, [Kraft] has no evidence otherwise to support his claims against OMCO. This is particularly true where the Property is – and always has been – reasonably maintained and is free from any known unreasonable dangerous conditions.

(Aug. 8, 2017 OMCO's Mot. for Summ. Jgmt. at 3.) OMCO attached in support of its motion the affidavit of Daniel McManamon, treasurer for OMCO, who averred that 1200 Oakland Avenue always had been reasonably maintained, with ice and snow removal, as necessary. McManamon stated that he "did not have actual or constructive knowledge that any accumulation of ice or snow at the Property had created a condition substantially more dangerous than one would normally associate with snow and ice. I am unaware of any unnatural accumulation of ice and/or snow at the Property on November 22, 2014." (McManamon Aff. at ¶ 6, attached to OMCO's Mot. for Summ. Jgmt.) McManamon also stated there were no dangerous conditions at the property and no known construction defects related to the driveway.

{¶ 11} On September 5, 2017, Kraft filed a motion for leave to file his responses to OMCO's requests for admissions out of rule and to withdraw his deemed admissions to OMCO's request for admissions. He further asked for leave to respond to OMCO's motion for summary judgment out of rule. Kraft stated that he had fractured his elbow on May 19, 2017, an injury that prevented him from responding to OMCO's request for admissions.

{¶ 12} On September 19, 2017, the trial court denied Kraft's motion, stating that his elbow injury was an insufficient excuse for failing to respond to OMCO. The trial court stated further that it was baffled as to how Kraft's injury could prevent him from responding to OMCO's requests for four months or to OMCO's motion for summary judgment within the time permitted by rule. In a footnote, the trial court observed that Kraft had filed the same motion again on September 12, 2017, and likewise denied that second motion. The trial court, declaring OMCO's motion for summary judgment unopposed and ripe for decision, granted OMCO's motion.

{¶ 13} The September 19, 2017 order was the fourth and final order the trial court issued with respect to the four named defendants in the underlying action. At this juncture, the trial court had dismissed all of Kraft's claims against all four defendants-appellees in this matter.

### C. Kraft's October 13, 2017 Motion to Vacate Trial Court's Judgments on Dispositive Motions

{¶ 14} On October 13, 2017, Kraft filed a motion to vacate the trial court's judgments granting dispositive motions that had been filed by Davis, OMCO, and the two other named defendants who are not parties to this appeal. Kraft argued that his neglect was excusable due to injuries and/or medical conditions he was suffering from prior to the time Davis filed its motion. Kraft alleged that the building located at 1200 Oakland Avenue was substantially completed less than ten years before his fall. Kraft filed his motion to vacate again on October 17, 2017.[2]

{¶ 15} Kraft filed this appeal on October 19, 2017, before the trial court acted on his motions to vacate filed October 13 and October 17, 2017.[3] Kraft originally appealed the trial court's judgments as to all four named defendants-appellees. Before this appeal came on for argument, however, Kraft dismissed appeals as to defendants-appellees Celeste and Hanlin-Rainaldi. Kraft now appeals the trial court's decisions to grant the separate motions for summary judgment of defendants-appellees, Davis and OMCO.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Kraft presented for our review four assignments of error:

> [1.] The trial court erred when it granted Defendant OMCO's motion for summary judgment because genuine issues of material fact exist as to Plaintiff Kraft's negligence claims.
>
> [2.] The trial court erred as a matter of law when it granted Defendant [Davis's] motion for summary judgment as being barred by Ohio's statute of repose because Plaintiff's negligence claims for bodily injury accrued before the expiration of the ten-year statute of repose period and were filed within the applicable two year statute of limitations.
>
> [3.] The trial court erred as a matter of law when it granted Defendant Celeste's motion for summary judgment on the pleadings as being barred by Ohio's statute of repose because

---

[2] The record before us reflects that, on October 20, 2017—the day after Kraft filed this appeal—Davis filed a brief in opposition to Kraft's motion to vacate. Davis argued that Kraft had failed to establish the elements of a Civ.R. 60(B) motion to vacate and had not submitted any evidence illustrating that there was a genuine issue of material fact that remained to be litigated for trial, with respect to Davis.

[3] On November 15, 2017, the trial court entered an order that it did not have jurisdiction to decide Kraft's October 13, 2017 motion to vacate because Kraft had filed this appeal, rendering Kraft's motion moot. On November 22, 2017, Kraft filed a motion with this Court to stay the appeal and remand this matter to the trial court to rule on his motion to vacate the final judgments. This Court denied Kraft's motion on December 4, 2017.

> Plaintiff's negligence claims for bodily injury accrued before the expiration of the ten-year statute of repose period and were filed within the applicable two year statute of limitations.
>
> [4.] The trial court erred when it denied pro se Plaintiff's motions for leave to withdraw deemed admissions, to file Plaintiff's completed discovery responses and List of Witnesses out of time, and to reconsider and set aside all Defendants' motions to dismiss which were all granted by default because Plaintiff's failure to provide timely responses all occurred during a period of several weeks in the summer of 2017 while Plaintiff, who needs more time to complete tasks due to his post-concussion syndrome sustained in the incident being litigated, was convalescing from a debilitating fracture to the elbow in his dominant right arm sustained on May 19, 2017.

Celeste and Hanlan-Rainaldi have been dismissed from this appeal, thus we consider only the first, second, and fourth assignments of error as they relate to OMCO and/or Davis.

## III. LAW AND DISCUSSION

### A. Standard of Review

{¶ 17} The trial court resolved Kraft's complaint by summary judgment after orders were entered governing discovery between the parties.

> Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of ComGeorgia* (1997), 123 Ohio App. 3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App. 3d 100, 103, 701 N.E.2d 383.

*Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184, ¶ 18 (10th Dist.).

{¶ 18} Accordingly, when reviewing an appeal of an order granting a motion for summary judgment, this Court uses the same standard of review as the trial court. *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One of Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993). An appellate court's review of a summary judgment disposition, however, is independent and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th

Dist.1993). Therefore, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence according to the standard set forth in Civ.R. 56, as well as according to applicable case law. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Cooper v. Red Roof Inns, Inc.*, 10th Dist. No. 00AP-876 (Mar. 30, 2001).

{¶ 19} Civ.R. 56(C) requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56 has been described as a means to facilitate the early assessment of the merits of claims, to foster pre-trial dismissal of meritless claims, and to define and narrow issues for trial. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. No. 102119, 2016-Ohio-1466, ¶ 92. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170 (1997) (Cook, J., concurring in part and dissenting in part). As such, summary judgment is a procedural device designed to promote judicial economy and to avoid needless trials.

> "The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. ' "The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist." ' *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643, 671 N.E.2d 578 (1996) (citations omitted.)"

*Erickson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-74, 2017-Ohio-1572, ¶ 19, quoting *Thevenin v. White Castle Mgt. Co.*, 10th Dist. No. 15AP-204, 2016-Ohio-1235, ¶ 45 (Brunner, J., concurring). A party seeking summary judgment on the grounds that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and must identify those parts of the record which demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996).

{¶ 20} If the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial.

{¶ 21} If the nonmoving party does not respond, summary judgment, if otherwise appropriate, shall be entered against the nonmoving party. *Id.* The nonmoving party may not rest on the mere allegations or denials of his or her pleadings, but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293.

### B. Discussion

{¶ 22} As a preliminary matter, we observe that Kraft is a pro se litigant and a former attorney who had been admitted to the practice of law in the states of New Jersey and New York. We note this solely for the purpose of acknowledging Kraft's familiarity and experience with the legal process, which cannot be said is typical of the majority of pro se litigants appearing before this Court.

### 1. Fourth Assignment of Error

{¶ 23} We first address Kraft's fourth assignment of error, as we believe it is dispositive of this matter. Kraft argues that the trial court erred when it denied his motions (1) for leave to withdraw deemed admissions, (2) to file his completed discovery responses and list of witnesses out of time, and (3) to reconsider and set aside OMCO and Davis's motions to dismiss, which he concedes the trial court had granted by default because of his own failure to timely provide responses. He argues the trial court should have granted him such latitude because he was convalescing from a fracture to the elbow in his dominant right arm, sustained on May 19, 2017. We disagree.

{¶ 24} The record of the underlying matter evidences that Kraft never complied with the trial court's case management schedule until September 12, 2017, after the cutoff date for discovery. Further, the record is devoid of filings, correspondence, or communication in any form from Kraft between the dates of May 19, 2017, when he requested an extension of time to respond to comply with the trial court's discovery order of May 3, 2017 and to provide discovery responses, and September 5, 2017, when he sought leave to file discovery responses out of rule, to withdraw deemed admissions and to oppose OMCO's motion for summary judgment out of rule. He offered as his only excuse his misfortune in fracturing his right elbow on May 19, 2017, "which interfered with" his ability to respond to OMCO's discovery requests and to oppose OMCO's motion for summary judgment in a timely fashion. (Sept. 7, 2017 Kraft's Cross Mot. at 1.)

{¶ 25} Having carefully reviewed the record, we find nothing to persuade us that the trial court abused its discretion in not forbearing the application of the Ohio Rules of Civil

Procedure and related law that he seeks. We share the trial court's bafflement as to how Kraft's injury, even though he is right-handed, would cause him to be unable to communicate with opposing parties. Moreover, Kraft provides no reason for not notifying the trial court or opposing parties of his situation by telephone, fax, email or other means, or not having someone contact the trial court and opposing counsel on his behalf, or not retaining legal counsel to represent his interests in this action at least until such time as he felt able to represent himself again. In this age of constant and immediate communication in myriad forms, we find it inexplicable that Kraft could not, and did not, apprise the trial court of his need for continuances before the discovery schedule cutoff date of September 5, 2017. His conduct is even less acceptable given his past experience as a practicing attorney.

{¶ 26} Based on our thorough review of the record, we find the trial court did not abuse its discretion in denying the motions Kraft lists in his fourth assignment of error.

{¶ 27} Kraft's fourth assignment of error is overruled.

### 2. First Assignment of Error

{¶ 28} Kraft argues the trial court erred when it granted OMCO's motion for summary judgment, alleging that genuine issues of material fact existed concerning his negligence claims. We disagree.

{¶ 29} To prevail on a negligence claim, Kraft must establish each of the following elements: (1) a duty running from the defendant to the plaintiff, (2) a breach of that duty, and (3) the breach directly and proximately caused damages or injury. *Hester v. Dwivedi*, 89 Ohio St.3d 575, 578 (2000); *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). "A presumption of negligence is never indulged from the mere fact of injury, but the burden of proof is upon the plaintiff to prove the negligence of the defendant and that such negligence is a proximate cause of injury and damage." *Ault v. Hall*, 119 Ohio St. 422 (1928), syllabus.

{¶ 30} This Court has consistently upheld the "no-duty winter rule." *Luft v. Ravemor, Inc.*, 10th Dist. No. 11AP-16, 2011-Ohio-6765, ¶ 13. The rationale is that individuals are assumed to appreciate and protect themselves against the inherent dangers associated with ice and snow during Ohio winters. *Brinkman v. Ross*, 68 Ohio St.3d 82, 84 (1993), citing *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38 (1967), and *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968). "Simply stated, property owners and occupiers owe

no duty to protect patrons from naturally occurring snow and ice." *Wiggins v. Moose Lodge #11*, 10th Dist. No. 15AP-896, 2016-Ohio-954, ¶ 19, citing *Brinkman* at 83.

{¶ 31} In *Kaeppner v. Leading Mgt., Inc.*, 10th Dist. No. 05AP-1324, 2006-Ohio-3588, ¶ 10-11, we stated the law in this area as follows:

> An owner or occupier of premises owes business invitees * * * a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 Ohio B. 267, 480 N.E.2d 474. However, the Supreme Court of Ohio has consistently held that an owner or occupier's duty of ordinary care does not extend to natural accumulations of ice and snow. *Debie v. Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St.2d 38, 227 N.E.2d 603; *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 233 N.E.2d 589; *Brinkman v. Ross* (1993), 68 Ohio St.3d 82, 1993 Ohio 72, 623 N.E.2d 1175. Thus, a landowner has no duty to remove natural accumulations of ice and snow, even if such conditions exist for an unreasonable amount of time. *Debie* at 41.
>
> Ohio courts have recognized exceptions to the general rule that an owner or occupier of property owes no duty to invitees regarding natural accumulations of ice and snow. For example, if an owner or occupier of property is shown to have had actual or implied notice that a natural accumulation of ice or snow on his or her property has created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of conditions prevailing generally in the area, negligence may be established. *Debie*. Also, where an owner or occupier is actively negligent in permitting or creating an unnatural accumulation of ice and snow, the no-duty rule is inapplicable. *See Lopatkovich v. Tiffin* (1986), 28 Ohio St.3d 204, 207, 28 Ohio B. 290, 503 N.E.2d 154. To survive a properly supported motion for summary judgment in this type of case, the plaintiff must produce evidence to establish * * * that the land owner was actively negligent in permitting an unnatural accumulation of ice and snow to exist. *Sasse v. Mahle* (Nov. 19, 1999), Lake App. No. 98-L-157, 1999 Ohio App. LEXIS 5508; *see Martin v. Hook SuperX, Inc.* (Mar. 18, 1993), Franklin App. No. 92AP-1649, 1993 Ohio App. LEXIS 1569

{¶ 32} OMCO argues that Kraft failed to establish a negligence claim against it. Based on our de novo review of the record, we agree. There is no evidence to show that the

ice on the driveway was an unnatural accumulation. Further, Kraft did not allege that the ice on the driveway concealed some other type of danger that created a condition substantially more dangerous than a business invitee should have anticipated. Moreover, our review of Kraft's admissions (due to his failure to respond to OMCO's request for admissions) show that he has admitted that he has no evidence to support his claim against OMCO.

{¶ 33} Additionally, there is no evidence to support Kraft's allegation that the ice on the driveway was an unnatural accumulation due to the driveway's defective design. To show a design defect, Kraft was required to present expert testimony. *Dailey v. Mayo Family Ltd. Partnership*, 115 Ohio App.3d 112, 117 (7th Dist.1996). Kraft failed to timely name an expert witness. There is no evidence in the record to support Kraft's claim that the ice on the driveway was an unnatural accumulation due to a defective design.

{¶ 34} OMCO supported its motion for summary judgment with the affidavit of its treasurer, Daniel McManamon, who averred that 1200 Oakland Avenue always had been reasonably maintained, there were no dangerous conditions at the property, and no known construction defects related to the driveway. McManamon averred further that he "did not have actual or constructive knowledge that any accumulation of ice or snow at the Property had created a condition substantially more dangerous than one would normally associate with snow and ice. I am unaware of any unnatural accumulation of ice and/or snow at the Property on November 22, 2014." (McManamon Aff. at ¶ 6.)

{¶ 35} OMCO, having satisfied its initial burden, caused the burden to shift to Kraft to respond with specific facts showing there was a genuine issue for trial of material fact on this subject or that as a matter of law OMCO's point was in error. Kraft, however, did not respond timely. Consequently, judgment was entered against him.

{¶ 36} Based on our de novo review of the record, viewing the evidence in a light most favorable to Kraft, a former attorney who understood the rules of civil procedure, reasonable minds could only find in favor of OMCO. We find the trial court did not err in granting OMCO's motion for summary judgment.

{¶ 37} Kraft's first assignment of error is overruled.

### 3. Second Assignment of Error

{¶ 38} Kraft argues the trial court erred as a matter of law when it granted Davis's motion for summary judgment and barred Kraft's claims under the statute of repose as provided for in R.C. 2305.131(A)(1). He argues that his negligence claims for bodily injury accrued before the expiration of the ten-year statute of repose period and were filed within the applicable two-year statute of limitations set forth in R.C. 2305.10(C). Kraft asserts that Davis's substantial completion of improvements to 1200 Oakland Avenue occurred in 2005. Kraft argues that his claims against Davis accrued on November 22, 2014, the date of his slip and fall, "before the expiration of the ten-year statute of repose period in 2015 and are not barred by Ohio's statute of repose." (Jan. 3, 2018 Kraft's Brief at 33.) Our de novo review of the record, however, fails to disclose any usable evidence supporting Kraft's assertion about when Davis's work on the property was substantially completed.

{¶ 39} The statute of repose that applies to this action is set forth in R.C. 2305.131, division (A)(1) which states:

> Notwithstanding an otherwise applicable period of limitations specified in this chapter or in section 2125.02 of the Revised Code and except as otherwise provided in divisions (A)(2), (A)(3), (C), and (D) of this section, no cause of action to recover damages for bodily injury, an injury to real or personal property, or wrongful death that arises out of a defective and unsafe condition of an improvement to real property and no cause of action for contribution or indemnity for damages sustained as a result of bodily injury, an injury to real or personal property, or wrongful death that arises out of a defective and unsafe condition of an improvement to real property shall accrue against a person who performed services for the improvement to real property or a person who furnished the design, planning, supervision of construction, or construction of the improvement to real property later than ten years from the date of substantial completion of such improvement.

Division (A)(2) of R.C. 2305.131 states:

> Notwithstanding an otherwise applicable period of limitations specified in this chapter or in section 2125.02 of the Revised Code, a claimant who discovers a defective and unsafe condition of an improvement to real property during the ten-year period specified in division (A)(1) of this section but less than two years prior to the expiration of that period may commence a civil action to recover damages as described in

that division within two years from the date of the discovery of that defective and unsafe condition.

{¶ 40} Kraft asserts that Davis performed its work at 1200 Oakland Avenue between 2003 and 2005. Assuming the assertion is accurate, the applicable period of repose expired in 2015. Kraft argues that, pursuant to R.C. 2305.131(A)(2), he had until November 22, 2016 to commence the underlying action, making his filing on November 18, 2016 timely. Kraft also relies on R.C. 2305.10(C)(4) as providing "a two-year limitations period for commencing a suit for injuries occurring before the expiration of the ten-year repose period of R.C. 2305.10(C)(1), 'but less than two years prior to the expiration of that period.' " (Kraft Brief at 35.)

{¶ 41} Davis disputes Kraft's assertion about the work timeline, stating that Kraft "incorrectly alleges that Davis performed its design work 'in or about 2003 through 2005.' " (Davis's Brief at 5.) Davis points out that Kraft did not support his "vague allegation with any evidence that can be considered on summary judgment." *Id.* Allegations are not enough to defend against supported allegations on summary judgment that no set of facts would support a nonmovant's claim. *Dresher.* Our de novo review of the record confirms that Kraft did not provide any evidence that the trial court or this Court could consider regarding his assertion that the period of repose expired in 2015.

{¶ 42} We have carefully reviewed Davis's motion for summary judgment and the supporting affidavit of Matt Canterna, a partner at Davis and an AIA architect. Canterna, based on his personal knowledge obtained from his review of Davis's records relative to the work performed at 1200 Oakland Avenue, and based on his education, training, and experience, averred "with certainty that Davis' work on the Project was substantially completed more than ten years prior to Warren Kraft's fall at the property on November 22, 2014." (Canterna Aff. at ¶ 9.) Based on Davis's unrefuted evidence, the ten-year period of repose relevant to the design work it performed at 1200 Oakland Avenue expired before 2014. Consequently, Kraft is barred from pursuing this matter against Davis.

{¶ 43} Based on our de novo review of the record, viewing the evidence in a light most favorable to Kraft, reasonable minds could only find in favor of Davis. We find that the trial court did not err in granting Davis's motion for summary judgment.

{¶ 44} Kraft's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 45} In our de novo review of the record, we hold the trial court did not err in granting summary judgment in favor of OMCO and Davis. Having reviewed the evidence and drawn all reasonable inferences therefrom in favor of Kraft as we are required to do by Civ.R. 56, we find that both OMCO and Davis were legally entitled to summary judgment. We overrule Kraft's first, second, and fourth assignments of error, and do not consider Kraft's third assignment of error. For the foregoing reasons, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.

———————————